UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOHN GROSS                              CIVIL ACTION

VERSUS                                  NO: 11-73

RSJ INTERNATIONAL, LLC, RSJ             SECTION: R
INTERNATIONAL, INC., and
RANDOLPH ANTHONY JOHNSON

## ORDER & REASONS

Plaintiff John Gross moves the Court to enter a default judgment against defendants RSJ International, LLC, RSJ International, Inc., and Randolph Anthony Johnson in the amount of $75,655.02, plus pre-judgment and post-judgment interest and all recoverable costs.[1] Because Gross has not adequately pleaded diversity jurisdiction in this case, the Court DENIES his motion.

## I.    BACKGROUND

On April 6, 2008, Gross entered into a construction contract with defendants RSJ International, LLC and RSJ International, Inc., both allegedly owned and operated by Gross's nephew, Randolph Anthony Johnson.[2] The contract provided for defendants to reconstruct Gross's 3815 Delachaise Street home in New Orleans, Louisiana, which had been destroyed by Hurricane

---

[1]    R. Doc. 17.

[2]    *Id.* at 2.

Katrina.[3] Defendants agreed to furnish the materials, restore the home, and construct an addition on the back of the home for the contract price of $92,100, which was to be paid with funds Gross received from the Louisiana Road Home Program.[4] The contract specified that defendants were to be paid one-third of the contract price at the time the contract was signed, the second third following completion of all framing and the installation of electrical and plumbing rough-ins, and the final third upon completion of the project.[5]

Soon after the project began, however, Johnson asked Gross for advance payments. Over the course of four months, Gross remitted $101,000 for work to be performed under the contract.[6] Shortly after Johnson's receipt of Gross's August 19, 2008 wire transfer - a sum which, according to Gross, Johnson knew to be the last of Gross's Road Home monies - Johnson defaulted on his obligations under the contract, returning to Colorado without

---

[3]     *Id.*

[4]     *Id.* at 2-3.

[5]     *Id.* at 3.

[6]     *Id.* Gross wired the payments from his New Orleans bank account to Johnson's Colorado bank account on the following dates and in the following amounts: $30,000 on April 7, 2008; $6,000 on May 2, 2008; $30,000 on May 28, 2008; $20,000 on July 21, 2008; $10,000 on August 8, 2008; and $5,000 on August 19, 2008. *Id.* at 3-4.

having completed the project.[7]

At the time defendants defaulted, Gross's home was allegedly uninhabitable. Without funds to hire a new contractor to complete the unfinished work, Gross was unable to live in his home.[8] In May 2009, home-rehabilitation non-profit Rebuilding Together New Orleans ("RTNO") agreed to complete the unfinished work at no cost. RTNO began work on Gross's home in August 2009 and completed the work in July 2010, but Gross has remained unable to move back into his home, as RTNO used Chinese drywall in the renovations, which has not yet been remediated.[9]

On January 13, 2011, Gross filed this lawsuit seeking relief from defendants in connection with their breach of the construction contract.[10] Despite being properly served with the

---

[7]    *Id.* at 4. Specifically, Gross alleges that defendant failed to provide materials and labor to complete the following obligations: (1) hang, tape and texture sheetrock; (2) paint the home; (3) install hardwood flooring throughout the home, excluding bathrooms; (4) install ceramic tile in both bathrooms, including floors; (5) install new wall and base kitchen cabinets; (6) install surround sound system throughout the home; (7) install new six-panel doors and hardware; (8) install base trim; (9) install insulation throughout the home; (10) caulk and spackle nail holes; (11) install can lights, ceiling fans and light fixtures; (12) install jetted bathtub; (13) install gutters around the entire home; (14) complete all electrical work; (15) complete all plumbing work; (16) complete all air-conditioning work; and (17) obtain all inspections needed.

[8]    *Id.* at 5.

[9]    *Id.*

[10]    R. Doc. 1.

complaint on January 21, 2011,[11] Defendants failed to file
responsive pleadings within 21 days of service and did not seek
extensions of time. On February 14, 2011, Gross moved for entry
of default,[12] and affirmed that defendant Johnson was not an
active member of the military, a minor, or incompetent. The Clerk
of Court entered the default on February 15, 2011.[13] Gross now
moves for entry of default judgment against all defendants.[14]


## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(b), a default
judgment may be entered against a party when it fails to plead or
otherwise respond to the plaintiff's complaint within the
required time period. Fed. R. Civ. P. 55(b). A plaintiff who
seeks a default judgment against an uncooperative defendant must
proceed through two steps. First, the plaintiff must petition the
court for the entry of default, which is simply "a notation of
the party's default on the clerk's record of the case." *Dow Chem.
Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir.
1986). *See also United States v. Hansen*, 795 F.2d 35, 37 (7th
Cir. 1986) (describing the entry of default as "an intermediate,

---

[11]  R. Doc. 7.

[12]  R. Doc. 9.

[13]  R. Doc. 10.

[14]  R. Doc. 17.

ministerial, nonjudicial, virtually meaningless docket entry"). Before the clerk may enter the defendant's default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Beyond that requirement, however, the entry of default is largely mechanical.

Once default has been entered, the plaintiff's well-pleaded factual allegations are deemed admitted. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). At the same time, the defaulting defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* After the defendant's default has been entered, the plaintiff may request the entry of judgment on the default. If the plaintiff's claim is for a sum certain and the defendant has not made an appearance in court, the request for a default judgment may be directed to the clerk. Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). No party is entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). The disposition of a motion for the entry of default judgment ultimately rests within the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

**III. DISCUSSION**

Before entering judgment, the district court must "look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). Judgment entered in the absence of jurisdiction is void, and the court must therefore refrain from entering judgment if its jurisdiction is uncertain.

In this case, subject matter jurisdiction is premised upon diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiff, a Louisiana citizen, must meet the amount-in-controversy requirement under § 1332, and must be diverse from all party defendants for diversity jurisdiction to lie. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) ("The concept of complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side."). Plaintiff alleges that defendant Randolph Anthony Johnson is a Colorado citizen, and that Defendants RSJ International, LLC and RSJ International, Inc. are both Colorado companies with principal places of business in Westminster, Colorado.[15] As "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal

_____

[15]    R. Doc. 1 at 2.

place of business," 28 U.S.C. § 1332(c)(1), plaintiff's allegations satisfy the rule that citizenship be "*distinctly* and *affirmatively* alleged" as to incorporated parties. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (emphasis in original).

Here, however, both RSJ International, LLC and RSJ International, Inc. are limited liability companies (LLCs), according to the website for the Colorado Secretary of State. Unlike corporations, the citizenship of an LLC "is determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).[16] Here, as plaintiff has made no allegations as to the membership of these companies or the citizenship of those members,[17] the Court will not speculate as to the composition of the companies. *See Mullins v. TestAmerica, Inc.*, 300 Fed. Appx. 259, 260-61 (5th Cir. 2008) (finding that allegations in a notice of removal identifying defendant simply as "a limited partnership existing under the

---

[16]    Further, if any member is an unincorporated entity, "the citizenship must be traced through however many layers of partners or members there may be in order to determine the citizenship of the entity." *Advocate Fin. v. Maher*, 2010 WL 2522636, at *1 (M.D. La. 2010) (citing *Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir. 2002)). *See also Greenville Imaging, LLC v. Wash. Hosp. Corp.*, 326 Fed. Appx. 797, 798 (5th Cir. 2009) (tracing LLC membership through four layers).

[17]    Plaintiff *has* noted that both companies are "owned and operated" by defendant Johnson. *See* R. Doc. 1 at 3. But there is no indication of any additional members, nor of the absence of any such members.

laws of the State of New York" without mentioning the company's partners or their respective states of citizenship were "facially insufficient to establish the existence of diversity jurisdiction," even absent a dispute between the parties as to jurisdiction, since "subject-matter jurisdiction cannot be created by waiver or consent").

This Court has discretion to give plaintiff an opportunity to amend his complaint to cure his defective jurisdictional allegations. *See Mullins*, 300 Fed. Appx. at 260 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.") (citing 28 U.S.C. § 1653; *Nadler v. Am. Motors Sales Corp.*, 764 F.2d 409, 413 (5th Cir. 1985). Although § 1653 is "liberally construed," federal courts permit amendments to cure these defects only when "examination of the record as a whole discloses at least a substantial likelihood that jurisdiction exists[.]" *Mullins*, 300 Fed. Appx. at 260-61 (quoting *Nadler*, 764 F.2d at 413). Here, the Court finds that such "substantial likelihood" exists, and consequently grants plaintiff leave to amend his complaint to allege "distinctly and affirmatively" the jurisdictional facts that give rise to diversity jurisdiction. In so doing, plaintiff is instructed to provide the Court with a list of all members of defendant LLCs so that the Court may assess whether it has diversity jurisdiction in this case.

**IV.  CONCLUSION**

For the foregoing reasons, plaintiff's motion for default judgment is DENIED. Plaintiff is hereby given leave to amend his pleadings.


New Orleans, Louisiana, this 5th day of January, 2012.


_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE

9