```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF LOUISIANA
```

```
JOHN GROSS                                    CIVIL ACTION

VERSUS                                        NO: 11-73

RSJ INTERNATIONAL, LLC, RSJ                   SECTION: R
INTERNATIONAL, INC., and
RANDOLPH ANTHONY JOHNSON
```

### **ORDER & REASONS**

Plaintiff John Gross moves the Court to enter a default judgment against defendants RSJ International, LLC, RSJ International, Inc., and Randolph Anthony Johnson in the amount of $75,655.02, plus pre-judgment and post-judgment interest and all recoverable costs.[1] As plaintiff has corrected the pleading defect since the time of his first request, the Court GRANTS his motion for default judgment.

### I.   BACKGROUND

On April 6, 2008, Gross entered into a construction contract with defendants RSJ International, LLC and RSJ International, Inc., both allegedly owned and operated by Gross's nephew, Randolph Anthony Johnson.[2] The contract provided for defendants to reconstruct Gross's 3815 Delachaise Street home in New Orleans, Louisiana, which had been destroyed by Hurricane

---

[1]   R. Doc. 25.

[2]   *Id.* at 2-3.

Katrina.[3] Defendants agreed to furnish the materials, restore the home, and construct an addition on the back of the home for the contract price of $92,100, which was to be paid with funds Gross received from the Louisiana Road Home Program.[4] The contract specified that defendants were to be paid one-third of the contract price at the time the contract was signed, the second third following completion of all framing and the installation of electrical and plumbing rough-ins, and the final third upon completion of the project.[5]

Soon after the project began, however, Johnson asked Gross for advance payments. Over the course of four months, Gross remitted $101,000 for work to be performed under the contract.[6] Shortly after Johnson's receipt of Gross's August 19, 2008 wire transfer - a sum which, according to Gross, Johnson knew to be the last of Gross's Road Home monies - Johnson defaulted on his obligations under the contract, returning to Colorado without

---

[3]   *Id.* at 3.

[4]   *Id.*

[5]   *Id.* at 3-4.

[6]   *Id.* at 4. Gross wired the payments from his New Orleans bank account to Johnson's Colorado bank account on the following dates and in the following amounts: $30,000 on April 7, 2008; $6,000 on May 2, 2008; $30,000 on May 28, 2008; $20,000 on July 21, 2008; $10,000 on August 8, 2008; and $5,000 on August 19, 2008. *Id.*

having completed the project.[7]

At the time defendants defaulted, Gross's home was allegedly uninhabitable, and without funds to hire a new contractor to complete the unfinished work, Gross was unable to live in his home.[8] In May 2009, home-rehabilitation non-profit Rebuilding Together New Orleans ("RTNO") agreed to complete the unfinished work at no cost. RTNO began work on Gross's home in August 2009 and completed the work in July 2010, but Gross has remained unable to move back into his home, as RTNO used Chinese drywall in the renovations, which has not yet been remediated.[9]

On January 13, 2011, Gross filed this lawsuit seeking relief from defendants in connection with their breach of the construction contract.[10] Despite being properly served with the

---

[7] *Id.* at 4-5. Specifically, Gross alleges that defendant failed to provide materials and labor to complete the following obligations: (1) hang, tape and texture sheetrock; (2) paint the home; (3) install hardwood flooring throughout the home, excluding bathrooms; (4) install ceramic tile in both bathrooms, including floors; (5) install new wall and base kitchen cabinets; (6) install surround sound system throughout the home; (7) install new six-panel doors and hardware; (8) install base trim; (9) install insulation throughout the home; (10) caulk and spackle nail holes; (11) install can lights, ceiling fans and light fixtures; (12) install jetted bathtub; (13) install gutters around the entire home; (14) complete all electrical work; (15) complete all plumbing work; (16) complete all air-conditioning work; and (17) obtain all inspections needed.

[8] *Id.* at 6.

[9] R. Doc. 25-1 at 6.

[10] R. Doc. 1.

complaint on January 21, 2011,[11] Defendants failed to file responsive pleadings within 21 days of service and did not seek extensions of time. On February 14, 2011, Gross moved for entry of default,[12] and affirmed that defendant Johnson was not an active member of the military, a minor, or incompetent. The Clerk of Court entered the default on February 15, 2011.[13] Gross then moved for a default judgment against all defendants.[14] As Gross had not adequately pleaded diversity jurisdiction, the Court denied plaintiff's motion, but granted him leave to amend his complaint to correct the defect.[15] Gross then filed an amended complaint,[16] properly served defendants,[17] received an entry of default from the Clerk of Court,[18] and now moves this Court for a default judgment.[19]

## II.  LEGAL STANDARD

---

[11]   R. Doc. 7.

[12]   R. Doc. 9.

[13]   R. Doc. 10.

[14]   R. Doc. 17.

[15]   R. Doc. 19.

[16]   R. Doc. 20.

[17]   *See* R. Doc. 21.

[18]   R. Doc. 24.

[19]   R. Doc. 25.

Under Federal Rule of Civil Procedure 55(b), a default judgment may be entered against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required time period. Fed. R. Civ. P. 55(b). A plaintiff who seeks a default judgment against an uncooperative defendant must proceed through two steps. First, the plaintiff must petition the court for the entry of default, which is simply "a notation of the party's default on the clerk's record of the case." *Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 335 (2d Cir. 1986). *See also United States v. Hansen*, 795 F.2d 35, 37 (7th Cir. 1986) (describing the entry of default as "an intermediate, ministerial, nonjudicial, virtually meaningless docket entry"). Before the clerk may enter the defendant's default, the plaintiff must show "by affidavit or otherwise" that the defendant "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Beyond that requirement, however, the entry of default is largely mechanical.

Once default has been entered, the plaintiff's well-pleaded factual allegations are deemed admitted. *See Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). At the same time, the defaulting defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id*. After the defendant's default has been entered, the plaintiff may request the entry of judgment on the default. If the

plaintiff's claim is for a sum certain and the defendant has not made an appearance in court, the request for a default judgment may be directed to the clerk. Fed. R. Civ. P. 55(b)(1). In all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). No party is entitled to a default judgment as a matter of right. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam). The disposition of a motion for the entry of default judgment ultimately rests within the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

**III. DISCUSSION**

**A.   Jurisdiction**

Before entering judgment, the district court must "look into its jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). Judgment entered in the absence of jurisdiction is void, and the court must therefore refrain from entering judgment if its jurisdiction is uncertain.

In this case, subject matter jurisdiction is premised upon diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiff, a Louisiana citizen, must meet the amount-in-controversy requirement under § 1332, and must be diverse from all party

defendants for diversity jurisdiction to lie. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) ("The concept of complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side."). Plaintiff alleges that defendant Randolph Anthony Johnson is a Colorado citizen, and that Defendants RSJ International, LLC and RSJ International, Inc. are both Colorado limited liability companies with principal places of business in Westminster, Colorado, *whose only members are Colorado citizens.*[20] As the citizenship of an LLC "is determined by the citizenship of all of its members," *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008),[21] plaintiff's allegations regarding the citizenship of the LLCs' members corrects the defect in his original complaint. As the amount in controversy exceeds $75,000 and there is complete diversity between plaintiff and defendants, the Court is satisfied that it has subject matter jurisdiction in this case.

So, too, is there personal jurisdiction over defendants. A

---

[20]   R. Doc. 20 at 2.

[21]   Further, if any member is an unincorporated entity, "the citizenship must be traced through however many layers of partners or members there may be in order to determine the citizenship of the entity." *Advocate Fin. v. Maher*, 2010 WL 2522636, at *1 (M.D. La. 2010) (citing *Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir. 2002)). *See also Greenville Imaging, LLC v. Wash. Hosp. Corp.*, 326 Fed. Appx. 797, 798 (5th Cir. 2009) (tracing LLC membership through four layers).

court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). A Court has specific jurisdiction sufficient to establish minimum contacts when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235,

243 (5th Cir. 2008). Here, plaintiff's action arises out of the breach of a contract, the material performance of which took place in Louisiana, and defendants were properly served with process. Personal jurisdiction is clear.

### B.     Entry of Default Judgment

The Court turns to whether a default judgment should be entered against defendants. The record shows that defendants were served with process twice - first on January 21, 2011, and after plaintiff amended his complaint, again on January 17, 2012. Yet defendants have failed to plead, and in fact, have made no appearance whatsoever despite the entry of default against them. Although judgments by default are generally disfavored, *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998), the Court finds that defendants' failure to appear has made it impossible to achieve the "just, speedy, and inexpensive disposition" of this case on the merits. *Sun Bank v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). The record does not reveal any excuse for defendants' failure to appear. Accordingly, the Court will enter a default judgment against defendants.

### C.     Breach of Contract, Bad Faith, and Damages

Since "a party in default does not admit mere conclusions of

law," it "remains for the [C]ourt to consider whether the unchallenged facts constitute a legitimate cause of action." Wright & Miller, 10A *Federal Practice & Procedure Civil* § 2688 (3d ed.); *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). Taking the allegations of the complaint as true, the Court finds that the plaintiff has stated a prima facie case of breach of contract. Under Louisiana law, if an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he is liable in damages for the losses that may ensue from his non-compliance with his contract. La. C.C. art. 2769. Here, Gross alleges that he and defendants entered into a valid contract, that defendants failed to perform the contract fully, and that the work had to be completed by a home restoration non-profit. The Court finds that Gross has made a prima facie case that defendants breached the contract.

Gross has also made a prima facie case for bad faith under Louisiana law - a question particularly relevant here because "[a]n obligor in bad faith is liable for all the damages, *foreseeable or not*, that are a direct consequence of his failure to perform." La. C.C. art. 1997 (emphasis added). "Bad faith 'generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties.'" *Conerly Corp. v. Regions Bank*, 2008

10

U.S. Dist. LEXIS 94674, *20 (E.D. La. 2008) (quoting *Bd. of Sup'rs of Louisiana State Univ. v. Louisiana Agricultural Finance Auth.*, 984 So. 2d 72, 80 (La. App. 1st Cir. 2008)). Gross alleges that defendants "intentionally and maliciously" defaulted on their obligations when they "walked off the job" upon receipt of what they knew to be the last of Gross's Road Home monies.[22] The Court finds this allegation sufficient to permit an inference of bad faith in Louisiana. *Cf. id.* (finding that allegations that defendants "did not intend to pay the sums [owed]" while nevertheless making "explicit representations that [plaintiff] would be paid in full for its work" were sufficient to state a claim for bad faith); *Grant v. Houser*, 2010 U.S. Dist. LEXIS 92801, *10 (E.D. La. 2010) (finding that allegations that defendant "intentionally withheld from Plaintiffs his financial interest in the transactions he was promoting to them [and] failed to disclose and intentionally withheld from them the lack of protections to preserve the purchase money" were sufficient to state a claim for bad faith).

Remaining is the issue of damages. "A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). A default judgment does not, however, establish the amount of damages. *Id.*; *Howard v. Weston*,

---

[22]   R. Doc. 20 at 4.

354 F. App'x 75, 76 (5th Cir. 2009) ("After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages."). "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing," but the rule "is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311 (citation omitted).

 Here, the Court finds that the amount defendant owes plaintiff as a result of the bad faith breach of contract is capable of mathematical calculation. A party injured by a contractual breach is entitled to be placed in the same position as he would have been in had the contract been properly performed. La. C.C. art. 2769; *Maxwell v. Cayse*, 54 So. 3d 118, 121 (La. App. 3d Cir. 2010). To prove the amount of damages, Gross provided an affidavit from the Intake Manager for the home rehabilitation non-profit that agreed to complete the work on his home, as well as the Full Workscope and Budget for that project. Both indicate that the value of the work performed to complete the restoration was $57,169.02.[23] Gross also submitted an

---

  23 R. Doc. 25-3 at 1-2, 8.

affidavit attesting that he has been unable to move back into his home as a result of defendants' breach, and that he paid $14,950.00 in rent from September 2008 (the time of defendants' breach) to July 2010 (the time at which RTNO initially completed its work).[24] The affidavit is not supported by other evidence to verify this sum, but Gross *has* submitted receipts indicating that he paid an additional $3,536.00 in rent and apartment application fees from October 2010 through May 2011,[25] after it was discovered that RTNO had installed hazardous Chinese drywall in his home. Whether these damages were foreseeable is irrelevant, as defendants' liability for bad faith breach of contract renders defendants liable regardless. *See* La. C.C. art. 1997.

Gross also prays for recovery of costs from defendants, to which the Court finds him entitled. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party."); 28 U.S.C. § 1920 (listing taxable costs). Gross is also entitled to pre-judgment interest from the date of judicial demand until the date of this judgment: "Issues regarding pre-judgment interest in a diversity case are governed by applicable state law," *Hall v. White*, 465 F.3d 587, 595 (5th Cir. 2006) (internal quotation marks omitted), and under

---

[24]   R. Doc. 25-2.

[25]   RTNO began paying Gross's rent in June 2011.

Louisiana law, "interest is recoverable on debts arising *ex contractu* from the time they become due, unless otherwise stipulated." *Dykes v. Maverick Motion Picture Group, L.L.C.*, 2010 U.S. Dist. LEXIS 75436, *24-25 (M.D. La. 2010) (citing *Corbello v. Iowa Production*, 850 So.2d 686 (La. 2003)). Finally, Gross is entitled to post-judgment interest from the date of this judgment until the award is paid. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

"When the court has sufficient information from the existing record to determine the amount of damages, further inquiry or an evidentiary hearing is unnecessary[,]" and the Court "may fix the amount of damages and render judgment based on the record." 10 *Moore's Federal Practice - Civil* § 55.32 (3d. ed). *See also Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."); *Leedo Cabinetry v. James Sales & Distrib.*, 157 F.3d 410, 414 (5th Cir. 1998) (amount of debt was established by plaintiff's affidavit and supporting documents). Critically, however, the Court "has a duty to ensure that there is a basis for the damages in the facts pleaded by the claimant." 10 *Moore's Federal*

14

*Practice - Civil* § 55.32 (3d. ed). *See also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (holding that district court need not hold evidentiary hearing on remand, but must take necessary steps to establish damages with reasonable certainty).

Here, the affidavits and supporting documents suffice to establish with reasonable certainty damages in the amount of $75,655.02. Where Gross has submitted copies of the RTNO Full Workscope and Budget for the home restoration project, third-party affidavits supporting the same, and receipts for his rent payments from October 2010 through May 2011, the true amount of damages is clearly shown. Even where his prayer for damages rests upon his own affidavit, as is the case with respect to rent payments from September 2008 to July 2010, the showing of damages is sufficient, absent any evidence to the contrary. *See, e.g., Banco Bilbao Vizcaya Argentaria v. Family Rests., Inc.*, 285 F.3d 111, 114 (1st Cir. 2002) (finding no uncertainty about the amounts at issue when complaint contained specific dollar figures which were supported by affidavits from appellees); *Int'l Painters and Allied Trades Industry Pension Fund v. Brighton Painting Co.*, 267 F.R.D. 426, 428 (D.D.C. 2010) ("In ruling on such a motion [for a default judgment], the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment.").

15

The Court finds that the submitted affidavits and supporting documents show defendants liable for damages in the amount of $75,655.02, plus costs, pre-judgment interest from the date of judicial demand until judgment is entered, and post-judgment interest from the date of judgment until paid.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for default judgment against defendants in the amount of $75,655.02, plus costs, pre-judgment interest at the legal rate from January 13, 2011 until March 6, 2012, and post-judgment interest from March 6, 2012 until paid.

New Orleans, Louisiana, this **6th** day of March, 2012.

_____
SARAH S. VANCE

UNITED STATES DISTRICT JUDGE